**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
**Case No. _____**

MARIANNE JOFFE, DEBBE SCHERTZER,
and STEPHANIE RODRIGUEZ, individually and
on behalf of all others similarly situated,

       Plaintiffs,                               CLASS ACTION

v.

GEICO INDEMNITY INSURANCE COMPANY,
GOVERNMENT EMPLOYEES INSURANCE
COMPANY, and GEICO GENERAL INSURANCE
COMPANY,

       Defendants.

_____/

**PLAINTIFFS MARIANNE JOFFE, DEBBE SHERTZER, AND**
**STEPHANIE RODRIGUEZ'S CLASS ACTION COMPLAINT FOR**
**DAMAGES, INJUNCTIVE RELIEF, AND DEMAND FOR JURY TRIAL**

PLAINTIFFS MARIANNE JOFFE ("Joffe"), DEBBE SCHERTZER ("Schertzer") (f/k/a

Debbe Faunce), and STEPHANIE RODRIGUEZ ("Rodriguez") (collectively, "Plaintiffs"),

individually and on behalf of all others similarly situated, file this Class Action Complaint against

GEICO Indemnity Company ("GEICO Indemnity"), Government Employees Insurance Company,

and GEICO General Insurance Company ("GEICO General") (collectively, "Defendants"), and

assert upon personal knowledge as to their own acts and status, and upon information and belief

as to all other matters, the following allegations:

# I.     NATURE OF THE ACTION

1.

This is a Class Action lawsuit by Plaintiffs Joffe, Schertzer, and Rodriguez, who insured their leased vehicles under GEICO Indemnity's, Government Employees Insurance Company's, and GEICO General's private passenger auto ("PPA") insurance policies (the "Policies") providing coverage for PPA physical damage.

2.

The allegations in this lawsuit are similar to the allegations, and include the same legal issues, raised in *Roth v. GEICO General Insurance Company*, Case No. 16-CV-62942-WPD, United States District Court for the Southern District of Florida, Fort Lauderdale Division.  In *Roth,* the Court certified a class of leased vehicle insureds with total losses occurring during the five year period before the August 30, 2016 filing of that lawsuit, and granted summary judgment in favor of plaintiff and the class and against GEICO General.  The present claims against GEICO General are only for the period *after* August 30, 2016 (which claims are *not* included in the *Roth* lawsuit).  The claims in this lawsuit against GEICO Indemnity and Government Employees Insurance Company are for the period five years before the filing of this lawsuit through and including the date that a class is certified for insureds of those Defendants.

3.

Defendants are affiliated insurance companies that utilize the same insurance policy forms, provide the same coverages, and adjust total loss claims with the same practices and procedures.

4.

The insurance policies at issue in this lawsuit are form policies known as form A-30FL (03-11), attached as Exhibit A, and form A-70 FL (03-11), attached as Exhibit B (together, the

"Policies" or "Policy").  These two form policies (Exhibits A and B) are materially identical in all respects relevant to this lawsuit. All Policy terms that are relevant to this lawsuit are contained in these two policy forms.

5.

The GEICO Indemnity policy form covering Plaintiff Joffe's total loss leased vehicle was either a form A-30FL (03-11) (Exhibit A) or form A-70 FL (03-11) (Exhibit B).

6.

The GEICO General policy form covering Plaintiff Rodriguez's total loss leased vehicle was either a form A-30FL (03-11) (Exhibit A) or form A-70 FL (03-11) (Exhibit B).

7.

The Government Employees Insurance Company's policy form covering Plaintiff Schertzer's total loss leased vehicle for PPA physical damage is form A-30FL (03-11) (Exhibit A).

8.

The Policies require payment of Actual Cash Value ("ACV") on first-party total loss physical damage claims.

9.

The Policies define ACV as "the **replacement cost** of the auto or property less depreciation or betterment."  (Ex. A, Policy form, at 12) (Ex. B, Policy form, at 13) (original emphasis removed; new emphasis added.)

10.

Under Flordia law, sales tax is a mandatory fee involved with the purchase of any vehicle, and therefore part of the replacement cost of any vehicle.  Defendants pay sales tax on first-party

total loss PPA physical damage claims for vehicles that are owned outright or financed because sales tax is part of ACV under the Policies.

11.

Defendants do not pay sales tax on first-party total loss PPA physical damage claims for leased vehicles in Florida.

12.

Defendants' failure to pay sales tax on first-party total loss PPA physical damage claims for leased vehicles violates the terms of Defendants' Policies (contracts) with Plaintiffs.

13.

All covered vehicles are defined as an "owned auto" under the Policies.

14.

Sales tax will necessarily be incurred as part of the replacement cost of the auto for all leased (as well as owned and financed) vehicles, and thus, sales tax is covered under the Policies' definition of ACV.

15.

Under Flordia law, title transfer fees are mandatory fees involved with the replacement of the auto for all leased (as well as owned and financed) vehicles, and, thus, part of the replacement cost of a leased vehicle.

16.

Defendants do not pay title transfer fees on first-party total loss claims involving leased vehicles in Florida.

17.

Defendants' failure to pay title transfer fees violates Defendants' Policies (contracts) with Plaintiffs and applicable state law.

18.

This lawsuit is brought on behalf of (1) Plaintiffs Joffe, Schertzer, and Rodriguez, and a Monetary Relief Class of class members who were not paid sales tax and title transfer fees on their covered leased vehicle first-party total loss claims; and (2) Plaintiffs Joffe, Schertzer, and Rodriguez, and an Injunctive Class of class members who are insureds under PPA physical damage polices for leased vehicles.

## II.     JURISDICTION AND VENUE

19.

This Court has subject matter jurisdiction over all of Plaintiffs' claims pursuant to 28 U.S.C. § 1332(d)(2).  This is a class action in which the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs.  Plaintiffs are Florida citizens and Defendants are citizens of a state different from Plaintiffs.  There are more than 100 members of the Florida Class sought to be certified.

20.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## III.     THE PARTIES

### A.  Named Plaintiffs

21.

Plaintiff Joffe is an adult who, at all relevant times, resided in and was domiciled in Broward County, Florida, with an intent to stay.  Plaintiff Joffe is a citizen of Florida.  Plaintiff

Joffe's individual claims in this lawsuit arise from a policy of insurance issued by GEICO Indemnity.

22.

Plaintiff Schertzer is an adult who, at all relevant times, resided in and was domiciled in Collier County, Florida, with an intent to stay.  Plaintiff Schertzer is a citizen of Florida.  Plaintiff Schertzer's individual claims arise from a policy of insurance issued by Government Employees Insurance Company.

23.

Plaintiff Rodriguez is an adult who, at all relevant times, resided in and was domiciled in Miami-Dade County, Florida, with an intent to stay.  Plaintiff Rodriguez is a citizen of Florida.  Plaintiff Rodriguez's individual claims arise from a policy of insurance issued by GEICO General.

24.

**B.  Geico Indemnity**

Defendant GEICO Indemnity is an insurance company incorporated in Maryland.  Its principal place of business is 5260 Western Avenue, Chevy Chase, MD, 20815.  Its Florida registered agent is Chief Financial Officer, 200 East Gaines Street, Tallahassee, Florida, 32399.

25.

GEICO Indemnity is the fourth largest PPA insurer in Florida, with total annual Florida premiums of over $1,141,172,170. (*See* Florida Office of Insurance 2017 Annual Report, attached as Exhibit C.)

26.

### C.  Government Employees Insurance Company

Defendant Government Employees Insurance Company is an insurance company incorporated in Maryland.  Its principal place of business is 5260 Western Avenue, Chevy Chase, MD, 20815.  Its Florida registered agent is Chief Financial Officer, 200 East Gaines Street, Tallahassee, Florida, 32399.

27.

Government Employees Insurance Company is the seventh largest PPA insurer in Florida, with total annual premiums of over $599,829,400.  (*See* Florida Office of Insurance 2017 Annual Report.)

### D.  GEICO General

28.

Defendant GEICO General is an insurance company incorporated in Maryland.  Its principal place of business is 5260 Western Avenue, Chevy Chase, MD, 20815.  Its Florida registered agent is Chief Financial Officer, 200 East Gaines Street, Tallahassee, Florida, 32399.

29.

GEICO General is the second largest PPA insurer in Florida, with total annual premiums of over $2,211,145,214. (*See* Florida Office of Insurance 2017 Annual Report.)

30.

### E.    Corporate affiliations

Defendants Government Employees Insurance Company, GEICO Indemnity, and GEICO General are all affiliated corporate entities.  Defendants, along with other affiliated companies, market collectively under the GEICO trademark and brand. (*See GEICO, Corporate Information,*

*Links and Resources* https://www.geico.com/about/corporate/corporate-ownership/ (last visited 6/15/2018).)

31.

Government Employees Insurance Company is sometimes referred to as GEICO. However, for purposes of clarity, the term GEICO will be used to reference all of the companies that market collectively under the GEICO trademark and brand. (*Id.*) GEICO is an indirect, wholly owned subsidiary of Berkshire Hathaway, Inc. (*Id.*)

32.

GEICO affiliated insurance companies consist of Government Employees Insurance Company, GEICO General Insurance Company, GEICO Indemnity Company, GEICO Casualty Company, GEICO Advantage Insurance Company, GEICO Choice Insurance Company, GEICO Secure Insurance Company, GEICO County Mutual Insurance Company and GEICO Marine Insurance Company. (*See* Berkshire Hathaway, Inc. 2017 Annual Report, at 34, attached as Exhibit D.) These companies offer primarily PPA insurance to individuals in all 50 states and the District of Columbia. (*Id.*)

33.

GEICO companies are private companies that do not provide separate financial results. GEICO wrote $30.5 billion in PPA premiums in 2017 (including GEICO Indemnity, Government Employees Insurance Company, and GEICO General) and $26.3 billion in premiums in 2016. (*See* Berkshire Hathaway, Inc. 2017 Annual Report, at 66.) GEICO has assets of more than $32 billion dollars. (*See Geico, Corporate Information, Links and Resources* https://www.geico.com/about/corporate/financial-strength/ (last visited 6/15/2018).)

34.

In 2017, GEICO reported that it had increased its voluntary policies in force by 41% over the prior five years.  (*See* Berkshire Hathaway, Inc. 2017 Annual Report, at 35.)

## IV.   FACTUAL ALLEGATIONS

### A.  Plaintiffs Were Issued Form A-30FL (03-11) or A-70FL (03-11) Policies.

35.

Plaintiff Joffe entered a policy agreement to be insured by GEICO Indemnity under policy form A-30FL (03-11) or A-70FL( 03-11) which was in full force and effect on September 6, 2016. The Policy provided physical damage coverage for her leased 2016 Kia Optima Hybrid, VIN KNAGM4ADXG5093017 (the "Joffe Insured Vehicle").

36.

Plaintiff Schertzer entered a policy agreement to be insured by Government Employees Insurance Company under policy form A-30FL (03-11) with a policy period of July 8, 2014, through December 18, 2014.  The policy provided physical damage coverage for her leased Mazda MX-5 Miata, VIN JMINC2LFXC0226706 (the "Schertzer Insured Vehicle").

37.

Plaintiff Rodriguez entered a policy agreement to be insured by GEICO General under policy form A-30FL (03-11) with a policy period of June 30, 2017, through December 30, 2017. The policy provided physical damage coverage for her leased Volkswagen Jetta, VIN 3VWd07AJXFM212991 (the "Rodriguez Insured Vehicle").

38.

Upon information and belief, Defendants have issued Florida PPA physical damage policies under policy form A-30FL (03-11) and policy form A-70FL (03-11) since August 2011.

39.

Policy forms A-30FL (03-11) and A-70FL (03-11) have identical material terms relating

to the PPA physical damage coverages at issue here.

**B. The Policies Required Defendants to Pay the Replacement Cost of the Totaled Automobile on Total Loss Claims.**

40.

The Policies provided comprehensive and collision coverage with a coverage limit of ACV.

41.

The Policies define ACV as follows:

1. *Actual cash value* is the replacement cost of the auto or property less *depreciation* or *betterment*.
   a. *Betterment* is improvement of the auto or property to a value greater than its pre-loss condition.
   b. *Depreciation* means a decrease or loss in value to the auto or property because of use, disuse, physical wear and tear, age, outdatedness, or other causes.

(Ex. A, Policy form at 12; Ex. B, Policy form at 13.)[1]

42.

The Policies provide as follows relating to PPA physical damage comprehensive and

collision coverage:

A.     Comprehensive Coverage (excluding **collision**).

1. We will pay for each *loss*, less the applicable deductible, caused other than by *collision* to the *owned* or *non-owned auto*. This includes glass breakage. No deductible will apply to *loss* to windshield glass.
   At the option of the *insured*, breakage of glass caused by *collision* may be paid under the Collision coverage, if included in the policy.
2. We will pay, up to $200 per occurrence, less the applicable deductible, for *loss* to personal effects due to:
   a) Fire;
   b) Lightning;

---

[1] All bold and/or italics are in the original Policy.

    c)  Flood;
    d)  Falling objects;
    e)  Earthquake;
    f)  Explosion; or
    g)  Theft of the entire automobile.
    The property must be owned by **you** or a **relative**, and must be in or upon an **owned auto**.

3.  **Losses** arising out of a single occurrence shall be subject to no more than one deductible.

B.    Collision Coverage.

1.  We will pay for **collision loss** to the **owned auto** for the amount of each **loss** less the applicable deductible and to the **non-owned auto** for the amount of each **loss** less the applicable deductible when driven by **you** or a **relative**.

2.  We will pay up to $200 per occurrence, less the applicable deductible, for **loss** to personal effects due to a **collision**. The property must be owned by **you** or a **relative**, and must be in or upon an **owned auto**.

3.  **Losses** involving one **owned auto**, arising out of a single occurrence shall be subject to no more than one deductible.

4.  If more than one **owned auto** or **non-owned auto** is involved in a **collision loss**, any deductible will apply separately to each **owned auto** or **non-owned auto**.

(Exhibit A at 13-14; Exhibit B at 14.)

43.

The Policies define **Loss** as follows:

1.  **Loss** means direct and accidental loss of or damage to:

    a) An **owned** or **non-owned** auto, including its equipment; or
    b) Other property insured under this section.

(Exhibit A at 13; Exhibit B at 14.)  The Policies' definition of **Loss** applies to both collision and comprehensive coverage.

44.

There is no difference, for purposes of the duty to pay ACV on a first-party total loss claim, between a collision total loss claim and a comprehensive total loss claim.

45.

The Policies provide the following limit of liability for PPA physical damage coverage:

**LIMIT OF LIABILITY**

The limit of our liability for *loss*:

1.    Is the *actual cash value* of the property at the time of the *loss*;

2.    Will not exceed the prevailing competitive price to repair or replace the property at the time of *loss*, or any of its parts, including parts from non-original equipment manufacturers, with other of like kind and quality and will not include compensation for any diminution of value that is claimed to result from the *loss.* Although *you* have the right to choose any repair facility or location, the limit of liability for repair or replacement of such property is the prevailing competitive price which is the price we can secure from a competent and conveniently located repair facility. At *your* request, we will identify a repair facility that will perform the repairs or replacement at the prevailing competitive price;

3.    To personal effects arising out of one occurrence is $200;

4.    To a *trailer* not owned by *you* is $500;

5.    For *custom parts or equipment* is limited to the *actual cash value* of the *custom parts or equipment*, not to exceed the *actual cash value* of the vehicle.

*Actual cash value* or **betterment** of property will be determined at the time of the loss and will include an adjustment for **depreciation/betterment** and for the physical condition of the property.

6.    If this policy covers two or more autos or trailers any deductibles will apply separately to each.

(Exhibit A at 14-15; Exhibit B at 15.)

46.

The Policy defines owned, financed, and leased vehicles as owned vehicles. Specifically, the Physical Damage section of the polices defines "Owned Auto" as follows: "Any vehicle described in this policy for which a specific premium charge indicates there is physical damage coverage." (Exhibit A at 3, 12; Exhibit B at 3, 13.)

47.

The Plaintiff's leased vehicles were all described under their Policies and had specific premiums charged indicating there was physical damage coverage.

**C. The Replacement Cost For A Total Loss Vehicle Includes Applicable Sales Tax and Title Transfer Fees.**

48.

The Policies define ACV as "replacement cost of the auto or property less ***depreciation*** or ***betterment***." (Ex. A, Policy form at 12; Ex. B, Policy form 13.) Sales tax and title transfer fees are each mandatory applicable fees that must be paid with the replacement of any vehicle under Florida law.

49.

Florida law requires that a minimum of 6% sales tax be paid on every motor vehicle purchased, with the option for counties to charge an additional local tax of up to 2% on the first $5,000 of the motor vehicle cost.

50.

Florida law requires that all vehicles operated on state roadways have the title of the vehicle registered with the State. *See, e.g.*, Fla. Stat. Ann. § 320.02 ("every owner or person in charge of a motor vehicle that is operated or driven on the roads of this state shall register the vehicle in this state."). The cost in Florida to transfer title to a purchased replacement vehicle is a minimum of $75.25.

51.

As a consequence, under Florida law, an insured vehicle cannot be replaced without payment of applicable sales tax and title transfer fees. These costs are, quite literally, part of the replacement cost of all totaled vehicles.

52.

Florida law provides that sales tax is a part of actual cash value (and replacement cost) unless unambiguously excluded from the insurance policy. *Mills v. Foremost Ins. Co.,* 511 F.3d 1300, 1305 (11th Cir. 2008) (applying Florida law and holding that ACV includes sales tax because sales tax was not unambiguously excluded from policy definition); *see also Bastian v. USAA et al,* 150 F. Supp. 3d 1284 (M.D. Fla. 2015) (same).

**D.  GEICO Tells the Public That It Pays Sales Tax and Title Fees on Total Loss Claims.**

53.

GEICO maintains a Claims Center and claims information website for the purpose of informing insureds of their rights when they suffer a total loss.  Through this website, GEICO and its affiliates, including GEICO Indemnity, Government Employees Insurance Company, and GEICO General made, and continue to make, false statements about coverage for sales tax and title fees on total losses to the general public.

54.

In the GEICO Claims Center website publication, "Car Is Totaled: Learn About The Total Loss Process" (www.geico.com/claims/claimsprocess/total-loss-process/) (last visited 6/15/18), GEICO states: "If your policy covers a total loss, GEICO will: pay the actual cash value of the vehicle (plus applicable state fees and taxes) less any deductible."

55.

Sales tax and title transfer fees are "applicable" to the replacement of any Florida vehicle because a vehicle cannot be replaced without payment of sales tax and title transfer fees.

56.

Contrary to the statement on its website, GEICO, including its affiliates GEICO Indemnity,

Government Employees Insurance Company, and GEICO General, does not pay sales tax and title fees to its total loss insureds in the State of Florida for an insured leased vehicle.

**E. Plaintiff Joffe Suffered a Total Loss and Was Not Paid Full Sales Tax and Title Fees As Required by the Policy and State Law.**

57.

On or about September 13, 2016, Plaintiff Joffe's Insured Vehicle was involved in a collision that rendered the vehicle a total loss.

58.

Plaintiff Joffe was entitled to recovery of ACV for her total loss under the Policy with GEICO Indemnity.

59.

GEICO Indemnity, through its adjuster Frank Roese issued a Total Loss Settlement Explanation indicating the Joffe Insured Vehicle was a total loss.  (Ex. E, Joffe Total Loss Settlement Explanation.)

60.

The Total Loss Settlement Explanation identifies the settlement calculations:

| | |
|---|---|
| Base Value | $24,249.00 |
| Condition Adjustment | $00.00 |
| Pre Tax Adjustment | $0.00 |
| Tax | $0.00 |
| Total Value | $24,249.00 |
| State and Local Regulatory Fees | $0.00 |
| Post Tax Adjustment | $0.00 |
| Less Deductible | $500.00 |
| Less Percent Negligent         0% | $0.00 |
| Less Retention Amount | $0.00 |
| Net Settlement Amount | $23,749.00 |
| Towing Charges | $0.00 |
| Storage Charges | $0.00 |

(Ex. E, Joffe Total Loss Settlement Explanation.)

61.

As shown by the Settlement Explanation, GEICO Indemnity did not pay sales tax on the total loss vehicle, nor did it pay any State and Local Regulatory Fees, such as title transfer fees.

62.

GEICO Indemnity thus failed to pay the full ACV on Plaintiff Joffe's claim.

63.

Plaintiff Joffe has been damaged in the minimum amount of $1,530.19 ($1,454.94 sales tax and $75.25, at minimum, in title transfer fees) by GEICO Indemnity's failure to pay these replacement costs on her total loss as required by the Policy.

**F.  Plaintiff Schertzer Suffered a Total Loss and Was Not Paid Sales Tax and Title Fees As Required by the Policy and State Law.**

64.

On or about September 10, 2017, Plaintiff Schertzer suffered a total loss to the 2012 Mazda MX-5 Miata insured under her policy.

65.

Plaintiff Schertzer was entitled to recovery of ACV for the total loss under her Policy with Government Employees Insurance Company.

66.

Government Employees Insurance Company had a market evaluation report prepared by its vendor, CCC One, and that valuation summary provided as follows:

```
Base Value                          $ 17,867.00
Condition Adjustment                $    720.00
Adjusted Vehicle Value              $ 18,587.00
Vehicular Sales Tax 6.00%           $  1,115.22
Sales Tax reflects all applicable state, county and municipal taxes
License/Fees (if applicable)        $ _____
Value before Deductible             $ 19,702.22
```

| Deductible | $  -500.00 |
| Total | $ 19,202.22 |

(Ex. F, CCC One Market Valuation Summary for Schertzer.)

67.

Upon information and belief, Government Employees Insurance Company  issued only a single payment to Chase Auto Finance in the amount of $18,087.00.  Government Employees Insurance Company did not make any payment for sales tax or title transfer fees.

(Ex. G, November 8, 2017 letter from GEICO employee Amber Floyd.)

68.

Government Employees Insurance Company thus failed to pay the full ACV on the claim.

69.

Plaintiff Schertzer has been damaged in the minimum amount of $1,190.47 ($1,115.22 sales tax and $75.25, at minimum, in title transfer fees) by Government Employees Insurance Company's failure to pay these replacement costs.

**G. Plaintiff Rodriguez Suffered a Total Loss and Was Not Paid Sales Tax and Title Fees As Required by the Policy and State Law.**

70.

On or about September 5, 2017, Plaintiff Rodriguez suffered a total loss to the 2015 Volkswagen Jetta insured under her policy.

71.

Plaintiff Rodriguez was entitled to recovery of ACV for the total loss under her Policy with GEICO General.

- 17 -

72.

GEICO General had a market evaluation report prepared by its vendor, CCC One, which

provides the following valuation summary:

| | |
|---|---|
| Base Value | $ 12,262.00 |
| Condition Adjustment | $    -433.20 |
| Adjusted Vehicle Value | $ 11,828.80 |
| Value before Deductible | $ 11,828.80 |
| Deductible | $    -500.00 |
| Total | $ 11,328.80 |

(Ex. H, CCC One Market Valuation Summary for Rodriguez.)

73.

Upon information and belief, GEICO General paid only $11,328.80 on the total loss claim.

GEICO General did not make any payment for sales tax or title transfer fees.

74.

GEICO General thus failed to pay the full ACV on the claim.  Plaintiff Rodriguez has been

damaged in the minimum amount of $784.98 ($709.73 sales tax and $75.25, at minimum, in title

transfer fees) by GEICO General's failure to pay these replacement costs.

**V.      JURISDICTIONAL AMOUNT IS MET**

75.

The amount in controversy in this lawsuit exceeds $5 million for each of GEICO

Indemnity, Government Employees Insurance Company, and GEICO General.

76.

GEICO publicly asserts that in the five year period from August 30, 2011 through August

30, 2016, there were approximately 136,032 total loss claims made on Florida automobile policies

issued by four GEICO entities (GEICO General Insurance Company, Government Employees

Insurance Company, GEICO Indemnity Company and GEICO Casualty Company) resulting in

total loss claim payments of approximately $1,396,814,777. (*See Roth v. GEICO General Insurance Company*, Case No. 16-CV-62942-WPD, S.D. Fla., Doc. 1, Notice of Removal.)[2]  Of these 136,032 total loss claims, GEICO publicly maintains approximately 7.4 % are estimated to be leased vehicles.  *Id.*  This amounts to 10,066 total loss lease claims for that time period.  On average, this amounts to 2,032 total loss lease claims per year through August 2016, under GEICO's proposed conservative numbers.

77.

Since August, 2016, GEICO's written Florida PPA premium has increased by approximately 25 percent per year.[3]

78.

GEICO estimated that the average total loss payment is $21,000 for the five year period through August, 2016. *Id.* GEICO estimated that, if damages accrued against the four collective GEICO entities based solely on failure to pay sales tax on all total loss leased vehicles, the damages for unpaid sales tax for the period August 30, 2011 to August 30, 2016 would be $13 million.  *Id.*

79.

GEICO's asserted $13 million amount in controversy was based solely on an alleged failure to pay sales tax for the five-year period ending August 30, 2016.  During this five year period, the average annual premium written in Florida was $2.7 billion for the Defendants.  The average annual premium for the period June 15, 2013 through June 15, 2018 is $3.7 billion.[4]  Adjusting

---

[2] Plaintiffs believes the number may be higher, but will use the numbers asserted by GEICO for the purposes of establishing jurisdiction before this Court.
[3] Based on a compound annual growth rate calculated from the years 2011 through 2016.
[4] This figure is based on projected premiums written for 2017 and 2018 using a calculated compound annual growth rate of 25% from 2011 through 2016. The year 2013 is multiplied by 55% to correspond to start date of June 15, 2013 (200 days / 365 days = .55).  The year 2018 is multiplied by 45% to correspond to end period of June 15, 2018 (165 days / 365 days = .45).

the $13 million amount in controversy to the increased premium written since August 30, 2016, the amount in controversy for the alleged failure to pay sales tax for the five years prior to June 15, 2018 is $17.8 million.[5]

80.

Florida Office of Insurance Regulation shows that the Defendants' percentage of the total PPA insurance written in Florida are: 56% for GEICO General; 29% for GEICO Indemnity; and 16% for Government Employees Insurance Company.

81.

The amount in controversy against GEICO Indemnity for failure to pay sales tax for the period June 15, 2013 through the present is $5.16 million ($17.8 million x 29%). The amount in controversy for the injunctive relief for three years increases the amount in controversy to $13.35 million.[6] Thirty percent in attorneys' fees increases the amount in controversy to $19.07 million.

82.

The amount in controversy against Government Employees Insurance Company for failure to pay sales tax for the period June 15, 2013 through the present is $2.85 million ($17.8 million x 16%). The amount in controversy for the injunctive relief for three years increases the amount in controversy $7.38 million.[7] Thirty percent in attorneys' fees increases the amount in controversy

---

[5] $3.7 billion average annual premium divided by $2.7 billion results in a growth rate of 1.37. This amount is multiplied by the prior $13 million amount in controversy.

[6] The average total premiums written for Defendants going forward is projected as $9.81 billion using the same 25% compound annual growth rate; or 2.65 times the $3.7 billion average annual premium for the period ending June 15, 2018. ($5.16 million in damages / 5 years = $1.03 million per year; $1.03 million X 2.65 growth X 3 years = $8.19 million). The injunctive relief sought would require GEICO Indemnity to pay $8.19 million in sales tax on leased vehicle total loss claims that it otherwise would not pay.

[7] $2.85 million in damages / 5 years = $.57 million per year; $.57 million X 2.65 growth X 3 years = $4.53 million. The injunctive relief would require Government Employees Insurance Company to pay $4.53 million in sales tax on leased vehicle total loss claims that it otherwise would not pay.

to $10.54 million.

83.

The amount in controversy against GEICO General for failure to pay sales tax for the period August 31, 2016 through the present requires a slightly different calculation. If the GEICO General claim in this lawsuit was for a five-year period, the amount in controversy for failure to pay sales tax would be $10 million ($17.8 million x 56%). But because the claim against GEICO General only goes back to August 31, 2016, the amount in controversy should be adjusted to account only for the estimated total loss claims during that period. During the period August 31, 2016 through the present, GEICO General wrote 50% of the total premium that it had written for the previous five years.[8,9] Allocating the amount in controversy to account only for this percentage of premium results in an amount in controversy for GEICO General of over $5 million. The amount in controversy for the injunctive relief for three years increases the amount in controversy to $24.88 million.[10] Thirty percent in attorneys' fees increases the amount in controversy to $35.54 million.

84.

The above claims are conservative and do not account for the amount in controversy

---

[8] During the period August 31, 2016 through present period, GEICO General wrote $5.05 billion in premiums. During the five-year period ending June 15, 2018, GEICO General wrote $10.12 billion in premiums.

[9] The 2016 premiums written is adjusted for only the last third of the year (Aug. 31 through Dec. 31). Premiums written for 2017 and 2018 estimated using the 25% compound annual growth rate.

[10] $5 million in damages / 2 years = $2.5 million per year; $2.5 million X 2.65 growth X 3 years = $19.88 million. The injunctive relief would require GEICO General to pay $19.88 million in sales tax on total loss leased vehicle claims that it otherwise would not pay.

relating to Defendants' failure to pay title transfer fees.

## VI.    CLASS ACTION ALLEGATIONS

### A.  The Monetary Relief Class.

85.

Pursuant to Fed. R. Civ. P. 23, Plaintiffs assert claims for breach of contract on behalf of a

Florida Monetary Relief Class ("Monetary Relief Class"), as defined as follows:

> All persons insured by Defendant Government Employees Insurance Company,
> Defendant GEICO Indemnity Company, or Defendant GEICO General Insurance
> Company under a Florida insurance policy for private passenger auto ("PPA")
> physical damage coverage who suffered a first-party total loss of a covered leased
> vehicle (1) at any time during the five years prior to the filing of this lawsuit up to
> the date of any order granting class certification (as to Defendant Government
> Employees Insurance Company and Defendant GEICO Indemnity Company), and
> (2) at any time from August 31, 2016 up to the date of any order granting class
> certification (as to Defendant GEICO General Insurance Company), whose claims
> were adjusted by one of the Defendants as total loss claims, whose claims resulted
> in payment by one of the Defendants of covered claims, and who were not paid the
> full total loss vehicle value ("TLVV") sales tax and/or title fees.

Excluded from the Monetary Relief Class are all officers and employees of GEICO,

GEICO Indemnity, Government Employees Insurance Company, GEICO General, and all of their

affiliates, parents, and subsidiaries; all persons who make a timely election to be excluded from

the Class; government entities; and the judges to whom this case is assigned and their immediate

family and court staff.

86.

The Monetary Relief Class meets the criteria for class certification under Fed. R. Civ. P.

23(a), (b)(1), (b)(3), and (c)(4).

**Fed. R. Civ. P. 23(a).**

87.

**Numerosity**.  The members of the Monetary Relief Class are so numerous that separate joinder of each member is impracticable.  Fed. R. Civ. P. 23(a)(1).  GEICO Indemnity is the fourth largest PPA insurer in the state of Florida, collecting over $1.14 billion in premiums in 2016.  Government Employees Insurance Company is the seventh largest PPA insurer in the state of Florida, collecting over $599 million in premiums in 2016.  GEICO General is the second largest PPA insurer in the state of Florida, collecting over $2.2 billion in premiums in 2016.   Upon information and belief, there are over 5,000 members of the Monetary Relief Class.

88.

The members of the Monetary Relief Class are ascertainable and readily identifiable from information and records in Defendants' possession, control, or custody.  Upon information and belief, GEICO Indemnity, Government Employees Insurance Company, and GEICO General maintain records of all total loss claims made by its insureds and paid by the Defendants.  These records include data that itemizes what categories of costs were and were not paid as part of ACV.  These categories include sales tax and title transfer fees.

89.

**Commonality**.   Common questions of law and fact exist and predominate over any question affecting only individual Monetary Relief Class Members.  Fed. R. Civ. P. 23(a)(2).  Because the central issues in this case turn on the interpretation of materially identical policy provisions, this case is especially well-suited to class adjudication.  Defendants and all members of the Monetary Relief Class are bound by the same material terms of policy forms A-30FL and A-70FL, and the central issues in the case all involve interpretation of the same material and

controlling terms.  The common questions include:

    a.  Whether Policy language "actual cash value," defined as the "replacement cost for an auto," includes sales tax;

    b.  Whether Policy language "actual cash value," defined as the "replacement cost for an auto," includes title transfer fees;

    c.  Whether Defendants are required under the Policy to pay full sales tax to first-party total loss claimants on leased vehicles; and

    d.  Whether Defendants are required under the Policy to pay full title transfer fees to first-party total loss claimants on leased vehicles.

90.

**Typicality**.  Plaintiffs' claims and defenses are typical of the claims of the Monetary Relief Class.  Fed. R. Civ. P. 23(a)(3).  Plaintiffs and Monetary Relief Class Members were injured through GEICO Indemnity's, Government Employee Insurance Company's, and GEICO General's uniform misconduct and their legal claims arise from the same core GEICO practices, namely, the failure to pay full ACV, including sales tax and title transfer fees, for first-party total loss leased vehicle claims.  Plaintiffs' claims are based upon the same legal theories as those of the Monetary Relief Class Members.  The Plaintiffs suffered the same harm as all the other Monetary Relief Class Members: the coverage for sales tax and title transfer fees that Defendants failed to pay its insureds.

91.

**Adequacy**.  Plaintiffs are adequate representatives of the proposed class because their interests do not conflict with the interests of the Monetary Relief Class Members they seek to represent, and Plaintiffs will fairly and adequately protect the interests of the Monetary Relief

Class.  Fed. R. Civ. P. 23(a)(4).  Plaintiffs' counsel are experienced in litigating consumer class actions and complex disputes, and have specific experience successfully litigating similar disputes as class counsel.  Plaintiffs' counsel do not have any conflict with the interests of the class.

92.

**Superiority**.   A class action is superior to all other available methods of fairly and efficiently adjudicating this dispute.  The injury sustained by each Monetary Relief Class Member, while meaningful on an individual basis, is not of such magnitude that it is economically feasible to prosecute individual actions against GEICO Indemnity, Government Employees Insurance Company, and GEICO General.  Even if it were economically feasible, requiring thousands of injured plaintiffs to file individual suits would impose an undue burden on the court system and almost certainly lead to inconsistent judgments.  By contrast, class treatment will present far fewer management difficulties and provide the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

**Fed. R. Civ. P. 23(b)(1).**

93.

Plaintiffs' claims are maintainable on behalf of the Monetary Relief Class pursuant to Fed. R. Civ. P. 23(b)(1) because the prosecution of separate claims or defenses by or against individual Monetary Relief Class Members would create a risk of: (A) inconsistent or varying adjudications with respect to individual Monetary Relief Class Members that would establish incompatible standards of conduct for the party opposing the Class; and (B) adjudications with respect to individual Monetary Relief Class Members that, as a practical matter, would be dispositive of the interests of other Monetary Relief Class Members who are not parties to the adjudications, or

would substantially impair or impede their ability to protect their interests.

94.

The relevant Policy provisions for each Monetary Relief Class Member are the same.  The relevant law relating to the interpretation and application of those Policy provisions for each Monetary Relief Class Member is the same.  There is the potential for inconsistent or varying adjudications concerning individual Monetary Relief Class Members.  Without a single adjudication as to the application of relevant law to the relevant policy provisions, different courts may reach different conclusions relating to the same legal and factual issues.

95.

Allowing the issues to be adjudicated in a piecemeal fashion likely would result in certain Monetary Relief Class Members who are not parties to individual adjudications having their rights impaired or impeded without notice or adequate representation.

**Fed. R. Civ. P. 23(b)(3).**

96.

There are questions of law and fact common to the Monetary Relief Class that under Fed. R. Civ P. 23(b)(3) predominate over any questions solely affecting individual members of the Monetary Relief Class, including but not limited to those common questions of law and fact identified in paragraph 89.  A class action is superior to other available methods for fairly and efficiently adjudicating the controversy for the reasons identified in paragraph 92.

**Fed. R. Civ. P. 23(c)(4).**

97.

Particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of

this matter and the parties' interests therein.  Such particular issues include, but are not limited to, the same issues identified in paragraph 89.

**B. The Injunctive Relief Class.**

98.

Pursuant to Fed. R. Civ. P. 23, Plaintiffs seek injunctive relief on behalf of a Florida Injunctive Relief Class ("Injunctive Relief Class"), as defined as follows:

> All persons insured by Defendant Government Employees Insurance Company, Defendant GEICO Indemnity Company, or Defendant GEICO General Insurance Company under Florida insurance policy form A-30FL (03-11) or form A-70 FL (03-11) for private passenger auto ("PPA") physical damage coverage for a leased vehicle.

99.

Excluded from the Injunctive Relief Class are all officers and employees of GEICO, GEICO Indemnity, Government Employees Insurance Company, GEICO General and all of their affiliates, parents, and subsidiaries; all persons who make a timely election to be excluded from the Class; government entities; and the judges to whom this case is assigned and their immediate family and court staff.

100.

The Injunctive Relief Class meets the criteria for certification under Fed. R. Civ. P. 23(a), and (b)(2).

**Fed. R. Civ. P. 23(a).**

101.

**Numerosity**.  The members of the Injunctive Relief Class are so numerous that separate joinder of each member is impracticable.  Fed. R. Civ. P. 23(a)(1).  Upon information and belief, there are over 5,000 members of the Injunctive Relief Class.

102.

**Commonality**.   Common questions of law and fact exist and predominate over any question affecting only individual Injunctive Relief Class Members.  Fed. R. Civ. P. 23(a)(2). Because the central issues in this case turn on the interpretation of identical policy provisions, this case is especially well-suited to class adjudication.  Defendant and all members of the Injunctive Relief Class are bound by the same material terms of policy forms A-30FL and A-70FL, and the central issues in the case all involve interpretation of the same material and controlling terms.  The common questions include:

a.  Whether Policy language "actual cash value," defined as the "replacement cost for an auto," includes sales tax;

b.  Whether Policy language "actual cash value," defined as the "replacement cost for an auto," includes title transfer fees;

c.  Whether Defendants are required under the Policy to pay full sales tax to first-party total loss claimants on leased vehicles; and

d.  Whether Defendants are required under the Policy to pay full title transfer fees to first-party total loss claimants on leased vehicles.

103.

**Typicality**.  Plaintiffs' claims and defenses are typical of the claims of the Injunctive Relief Class.  Fed. R. Civ. P. 23(a)(3).  Plaintiffs and Injunctive Relief Class Members have insurance Policies with identical material terms.  Plaintiffs' injunctive relief claims are based upon the same legal theories as those of the Injunctive Relief Class Members.

104.

**Adequacy**.  Plaintiffs are adequate representatives of the proposed class because their interests do not conflict with the interests of the Injunctive Relief Class Members they seek to represent, and Plaintiffs will fairly and adequately protect the interests of the Injunctive Relief Class.  Fed. R. Civ. P. 23(a)(4).  Plaintiffs' counsel are experienced in litigating consumer class actions and complex disputes, and have specific experience successfully litigating similar disputes as class counsel.  Plaintiffs' counsel do not have any conflict with the interests of the class.

105.

**Superiority**.   A class action is superior to all other available methods of fairly and efficiently adjudicating this dispute.  This liability issue will be contested by Defendants, and is of such importance for so many class members that it is not economically feasible to prosecute individual actions against GEICO Indemnity, Government Employees Insurance Company, or GEICO General.

**Fed. R. Civ. P. 23(b)(2).**

106.

Plaintiffs' claims also are maintainable on behalf of the Injunctive Relief Class pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants have acted, and refused to act, on grounds that apply generally to all the   Injunctive Relief Class Members, thereby making final injunctive relief

appropriate with respect to the Injunctive Relief Class as a whole. Defendants have created and implemented a uniform claims handling practice based on policy language that is applicable to all Injunctive Relief Class Members. Defendants' practice of failing to pay full ACV, including sales tax and title transfer fees, for first-party total loss claims where the total loss leased vehicle claims applies generally to all Injunctive Relief Class Members and is ongoing.

107.

Defendants' breach of Policy provisions requiring them to pay full ACV on total loss claims is a continuing breach and violation of Policy terms. Injunctive relief is necessary to stop these repeat and continued violations, which are likely to continue, repeat, and cause damages to Plaintiffs and the Injunctive Relief Class in the future.

## VII.   COUNTS

### Count 1 – Breach of Contract

108.

Plaintiffs Joffe, Schertzer, and Rodriguez incorporate by reference all allegations of all prior paragraphs as though fully set forth herein.

109.

This Count is brought by Plaintiffs on behalf of themselves and class members against all Defendants.

110.

Plaintiffs were parties to an insurance contract with Defendants.

111.

Each Class Member was a party to PPA insurance contract with a Defendant under Policy Form A-30FL (03-11)) or Policy form A-70 FL (03-11).

112.

The material provisions of Policy Form A-30(03-11) and Policy Form A-70 FL (03-11) are identical.

113.

The interpretation of Plaintiffs and all Class Members' insurance Policies is governed by Florida law.

114.

Plaintiffs and each Class Member made a claim determined by Defendants to be a first-party total loss under their insurance contract, and determined by Defendants to be a covered claim.

All Defendants, by paying the total loss claim, determined that each Plaintiff and each Class Member complied with the terms of their insurance contracts, and fulfilled all of their duties and conditions under the Policies for each Plaintiff to be paid on his or her total loss.

115.

Plaintiffs and each Class Member's insurance contract required all Defendants to pay full ACV, including sales tax and title transfer fees.

116.

All Defendants refused to pay Plaintiffs and Class Members full ACV (including sales tax and title transfer fees), and in so doing Defendant breached its insurance contracts with Plaintiffs and each Class Member.

117.

Plaintiffs and the Class Members have suffered monetary damages caused by all Defendants' insurance contract breaches.

**Count 2 – Attorneys' Fees**

118.

Plaintiffs Joffe, Schertzer, and Rodriguez incorporate by reference all allegations of all prior paragraphs as though fully set forth herein.

119.

Upon the rendition of a judgment or decree by this Court against Defendants and in favor of Plaintiffs or Class Members, applicable law (including Fla. Stat. § 627.428) requires that this Court shall adjudge or decree against Defendants and in favor of Plaintiffs and/or Class Members, a reasonable sum as attorneys' fees, expenses, and costs for their attorneys prosecuting the suit in which the recovery is had.[11]

120.

Such compensation or fees of the attorneys shall be included in the judgment or decree rendered in the case. *See, e.g.,* Fla. Stat. § 627.428(3).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the Classes, pray for relief and judgment as follows:

A.    For an order certifying this action as a class action on behalf of the Classes described above;

B.    For monetary damages in the amounts owed to Plaintiffs and Monetary Relief Class Members under the Policies;

---

[11] *See e.g., All Underwriters v. Weisberg,* 222 F.3d 1309, 1315 (11th Cir. 2000), *cert. denied.* 531 U.S. 1061 (2000) (holding that Fla. Stat. § 627.428 is substantive law for purposes of *Erie* and awarding attorneys' fees pursuant to that provision).

C.      For injunctive relief on behalf of Injunctive Relief Class Members to prevent continuation of this illegal practice by Defendants, and for other injunctive relief as is proven appropriate in this matter;

D.      For all other damages according to proof;

E.      For an award of attorneys' fees and expenses as appropriate pursuant to applicable law (including Fla. Stat. § 627.428);

F.      For costs of suit herein incurred;

G.      For both pre- and post-judgment interest on any amounts awarded; and

H.      For such other and further relief as the Court may deem proper.

Dated this 15th day of June, 2018.

/s/ Bradley W. Pratt
Georgia Bar No. 586672
Florida Bar No. 0094300
Pratt Clay, LLC
4401 Northside Parkway, Suite 520
Atlanta, Georgia 30327
Phone:  (404) 949-8118
Facsimile:  (404) 410-0563
bradley@prattclay.com

*Trial Counsel*

Tracy L. Markham
Florida Bar No. 0040126
Avolio & Hanlon, P.C.
2800 N 5th Street, Suite 302
St. Augustine, Florida 32084
Phone: (904) 794 7005
Facsimile: (904) 794 7007
tlm@avoliohanlonfl.com
tlmarkhamlaw@gmail.com

Andrew Lampros
Georgia Bar No. 432328
Motion to Appear Pro Hac Vice to be filed
Hall & Lampros, LLP

- 33 -

1230 Peachtree Street, NE, Suite 950
Atlanta, GA 30309
Phone: (404) 876-8100
Facsimile: (404) 876-3477
gordon@hallandlampros.com

Edmund A. Normand
Florida Bar No.: 0865590
Jacob Phillips
Florida Bar No.: 0120130
Normand Law PLLC
62 W. Colonial Drive, Suite 209
Orlando, FL 32801
Telephone: 407-603-6031
Fax: 888-974-2175
Ed@ednormand.com
Firm@ednormand.com
Jacob@ednormand.com

Christopher J. Lynch
Florida Bar No. 331041
Christopher J. Lynch, P.A.
6915 Red Road, Suite 208
Coral Gables, Florida 33143
Telephone: (305) 443-6200
Fax: (305) 443-6204
Clynch@hunterlynchlaw.com
Lmartinez@hunterlynchaw.com

*Counsel for Plaintiffs*