UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

MARIANNE JOFFE, DEBBE SCHERTZER, and STEPHANIE RODRIGUEZ, individually and on behalf of all others similarly situated,

CASE NO: 18-61361-CIV-DIMITROULEAS /SNOW

Plaintiffs,

vs.

GEICO INDEMNITY COMPANY, GOVERNMENT EMPLOYEES INSURANCE COMPANY, and GEICO GENERAL INSURANCE COMPANY,

Defendants.

_____/

**PLAINTIFF'S MOTION TO EXCLUDE TESTIMONY OF ROOSEVELT MOSLEY AND REQUEST FOR *DAUBERT* HEARING**

Plaintiffs Marianne Joffe, Stephanie Rodriguez, and Debbe Schertzer ("Plaintiffs"), individually and on behalf of the certified class, by and through the undersigned counsel, pursuant to Rules 403 and 702 of the Federal Rules of Evidence, respectfully moves this Court to exclude the expert testimony of Defendants Government Employees Insurance Co., GEICO Indemnity Co., and GEICO General Insurance Co. ("Defendants" or "GEICO") proffered expert, Roosevelt Mosley, and request a *Daubert* Hearing concerning the same.

**I.   INTRODUCTION**

GEICO provided an expert report from Roosevelt Mosley as a rebuttal to Plaintiffs' expert, George Erickson. Mr. Erickson reviewed the evidence in the record, and testified that not only did GEICO's Policy treat leased and non-leased vehicles identically and promise the same coverage, but also that GEICO charged precisely the same premium for leased and non-leased vehicles, all else being equal. Mr. Moseley, an actuary, far from rebutting Mr. Erickson, confirmed that based on his review, Mr. Erickson was correct in testifying that GEICO charges the same premiums.

Mr. Mosley also testified, however, that because of loss ratios, GEICO *could* have charged different premiums and still maintained actuarial soundness. But what GEICO *could* or *could not*

have done is irrelevant to this lawsuit, given that GEICO in fact *did not* charge different premiums, as Mr. Moseley confirmed. Because Mr. Mosley's testimony is irrelevant – and unresponsive to Mr. Erickson's report to which it purported to respond – it should be excluded. *See* Fed. R. Evid. 702(a) (expert testimony admissible only if it "will help the trier of fact to understand the evidence or determine a fact in issue).

Second, Mr. Mosley's testimony was based, not on GEICO's loss ratio reports, but on a general loss-ratio nationwide one-page "summary" that (1) included all coverages (comprehensive/collision, UM, bodily injury, liability, PIP, etc.) and was not limited to first-party property damage (consequently, the small difference identified could be completely unrelated to comprehensive/collision loss ratios, and Mr. Mosely offers no opinion or methodology purporting to show otherwise), and (2) Mr. Mosley did not actually review, and for which Mr. Mosely admittedly has no knowledge concerning the underlying data. Perhaps most importantly, the "summary" on which Mr. Mosley relies *does not even control for any variables whatsoever*. The "summary" simply does not demonstrate a comparison between leased vehicles and non-leased vehicles of the same make, model, age, cost, etc., but rather only leased and non-leased vehicles. In these ways, Mr. Mosely's opinions are not based on "sufficient facts or data," are not "the product of reliable principles and methods" and are not reliably "applied" to the evidence. Fed. R. Evid. 702(b)-(d).

Thus, Mr. Mosley advances opinions that are irrelevant, unhelpful to the jury, based on insufficient facts and data, not the product of reliable methods, and not reliably applied to the evidence. Accordingly, Plaintiffs respectfully submit Mr. Mosely should be excluded.

## II.   LEGAL STANDARD

Courts possess broad discretion in determining whether to exclude expert testimony. *See General Elec. Co. v. Joiner*, 522 U.S. 136, 142 (1997); *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F. 3d 1333, 1340 (11th Cir. 2003). Fed. R. Evid. 702, as explained by the Supreme Court in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993), and clarified in *General Elec. Co., v. Joiner*, 522 U.S. 136, 146 (1997) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), controls the admissibility of expert testimony. Expert testimony may be admitted into evidence only if: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology is sufficiently reliable; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the

evidence or to determine a fact in issue. See FED. R. EVID. 702; *see also Daubert*, 509 U.S. at 589; *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1257 (11th Cir. 2002).

The proponent of the expert must demonstrate by a preponderance of the evidence that the testimony satisfies each requirement. *See Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999); FED. R. EVID. 702 Committee Note (2000). Acting in a "gatekeeping role," a trial court must engage in a "preliminary assessment of whether the reasoning or methodology ... properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592-93. The goal of this assessment "is to ensure the reliability and relevancy of the expert testimony." *Kumho Tire*, 526 U.S. at 152; *see also Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005).

*Daubert* and *Kumho* require a two-step inquiry. *See Greenwell v. Boatwright*, 184 F.3d 492, 496 (6th Cir. 1999). The relevance step is designed to ensure that "there is a 'fit' between the [expert] testimony and the issue to be resolved by the trial." *Id*. The reliability step focuses on the "methodology and principles" that form the basis of the expert testimony. See *Greenwell*, 184 F.3d at 496; *Richter v. Home Depot*, Case No. 8:05–cv–2153–T–TBM, 2009 WL 2914256, *4 (M.D. Fla. Aug. 4, 2009) (McCoun, J.) (reliability element has three components: that testimony is based upon (1) sufficient facts or data, (2) reliable principles and methods, and (3) reliable application of principles and methods to the facts of the case). A court's inquiry under *Daubert* is flexible; the factors outlined are not intended to be a definitive test and do not limit the court's ability to contemplate other pertinent considerations. 509 U.S. at 594. *See also Quiet Tech. DC-8*, 326 F.3d at 1341 (noting the listed factors are not exhaustive and courts may consider any other facts that may advance its Rule 702 analysis).

### III.    ARGUMENT

After explaining various factors that may be utilized in premium ratemaking, the core of Mr. Mosley's opinion is found in paragraphs 32-34 of his Report (Exhibit A, hereinafter "Report"). There, Mr. Mosley opines that there could be differences in expected costs for lease vs. non-leased insured vehicles, and, if there are, the "primary reason" for such hypothetical differences is "the difference in the attitude of the policyholder." Report at ¶32. Mr. Mosley then provides a one-page

3

summary from CarFax which shows a 1.8% difference in loss ratio[1] between "leased" and "personal" vehicles, and, based on that, testifies that:

> "Based on this analysis, an insurance company could justify charging leased vehicles the same or even slightly higher rates even though the sales tax treatment is different for leased vehicles, as there is statistical support that overall, leased vehicles have losses that are on average higher than losses for owned vehicles, **all else being equal**."

-Report at ¶34 (emphasis added).

   **a. The Mosley Opinion is Irrelevant, and Will Not Be Helpful to the Jury Regarding a Fact In Issue, Because Mosley Confirmed GEICO Charges the Same Premiums for Leased and Non-Leased Vehicles, All Else Being Equal.**

As an initial matter, Mr. Mosley's testimony should be excluded because it fails the relevancy test. Mr. Mosley testified that his opinion was meant as a rebuttal to Plaintiff's expert George Erickson's opinion. Mosley Dep. (Exhibit B) at 9.

Mr. Erickson testified that GEICO's Policy does not distinguish between leased and non-leased vehicles as it pertains to the coverage promised, and that GEICO does not distinguish between leased and non-leased vehicles in the premiums it charges for the coverage provided. *See* Erickson Rep. (Exhibit C). Mr. Mosley then quickly confirmed that Mr. Erickson is correct – GEICO in fact charges precisely the same premiums for leased and non-leased vehicles, all else being equal. Mosley Dep. at 10-11.

What GEICO could or could not have done in a hypothetical universe where they promised different coverages or charged different premiums is irrelevant to the trier of fact. Because Mr. Mosley confirmed Mr. Ericksen's opinion was accurate – that GEICO charges the same premiums for leased and non-leased vehicles – the rest of the opinion deals only in a hypothetical world where GEICO's policy and ratemaking were completely different, and is therefore irrelevant to a trier of fact and should be excluded for that basis alone. *Daubert*, 509 U.S. at 591 (if opinion is not helpful to the trier of fact, it should be excluded even if reliable and even if expert is qualified). Opinion testimony that is not helpful to the jury in understanding a fact in issue is not admissible. Fed. R. Evid. 702(a).

---

[1] Loss ratio is the losses incurred on a policy divided by the premiums earned on a policy. Report at ¶33. If the losses incurred are $72.00, and the premiums earned are $100.00, the loss ratio is 72%.

b. **The Mosley Opinion is Unreliable.**

1. *The Opinion is Unreliable Because It Does Not Control for Any Variables, and Consequently the Opinion is Based on Insufficient Facts and Data.*

The first reason Mr. Mosley's opinion is unreliable is because neither the opinion nor the CarFax "summary" on which he relies controls for any variables whatsoever. Mr. Mosley's opinion was that "based on this analysis" – referring to the CarFax summary – leased vehicles have a 1.8% higher loss ratio than non-leased vehicles "**all else being equal**." In other words, if there are identical vehicles with the only difference being leased or non-leased, the leases have a higher loss ratio than the non-leases. Mr. Mosley's opinion is based on the unfounded, unproven, and untested (and untestable, because he has never seen and has not provided the underlying data) assumption that in the CarFax summary, *all else is equal*.

There is nothing in the "summary" to suggest as such, and Mr. Mosley conceded that there is no reason to believe the CarFax data controlled for any variables whatsoever. The only thing the CarFax "summary" (Report at Ex. 1) even purports to show is that "Lease" as a general category has a 1.8% higher loss ratio than "Personal" as a general category. But Mr. Mosley concedes he has no knowledge – and there is no reason to believe – that the underlying data controlled for any variable whatsoever, including driver age, driver credit, cost of vehicle, vehicle make, vehicle model, vehicle age, vehicle type, geographic location. Mosley *Roth* Dep. (Exhibit D) at 61-62.[2]

There is absolutely *no* reason to believe that leased vehicles of a given cost, age, make, model, etc. have a 1.8% higher loss ratio than non-leased vehicles of the same cost, age, make, model, etc. There is simply no basis to then conclude, as Mr. Mosley did, that leased vehicles have a 1.8% higher loss ratio than non-leased vehicles "all else being equal." It is just as plausible that leased vehicles are, on average, newer and more costly than non-leased vehicles, and that newer and more costly vehicles have a 1.8% higher loss ratio than older and less costly vehicles.[3]

Mr. Mosley took what is at best a correlation – leased vehicles have a 1.8% higher loss ratio than non-leased vehicles – and found it to be causation, i.e. that the difference must be *because the vehicle is leased*. This violates Fed. R. Evid. 702(c) and *Joiner*, 522 U.S. at 142,

---

[2] Mr. Mosley confirmed that his Roth testimony was accurate and that he had done no further research in the Carfax data. Mosley Dep. at 88-89.
[3] In other words, it is just as plausible that $15,000.00 *leased* vehicles have the same loss ratio as $15,000.00 *non-leased* vehicles, but that $15,000.00 vehicles have a slightly higher loss ratio than $14,000.00 vehicles, leased or not.

which require a proper "fit" between the methodology applied and the facts and data relied upon. Far from applying a sound methodology that meets this "fit" requirement for admissibility, Mr. Mosely's analysis ignores dozens of other possibilities – that leased vehicles on average are newer, or more expensive, or more likely to be a certain type of vehicle, or more likely to be in certain geographical regions – and that if the comparison controlled for such variables, the difference would dissipate. Courts have found that confusing correlation with causation is grounds to exclude expert testimony. *See, e.g.*, *United States v. Valencia*, 600 F.3d 389, 425 (5th Cir. 2010) (evidence of mere correlation, even a strong correlation, is often spurious and misleading when masqueraded as causal evidence, because it does not adequately account for other contributory variables); *Hall v. Thomas*, 753 F. Supp. 2d 1113, 1147 (N.D. Ala. 2010) (Expert excluded because he merely "described [a] correlation, without controlling for any of these other factors, and dub[bed] the correlation causal.") (emphasis added); *Hendrix v. Evenflo Co.*, 609 F.3d 1183, 1201 fn. 12 (11th Cir. 2010) (expert showed only a temporal relationship and "mere correlation" and was the type of "speculation, conjecture and inference" the Court has cautioned courts not to accept).

   2. *The Opinion is Unreliable Because Mosley Did Not Review and Has No Knowledge of the Underlying Data.*

The second reason Mr. Mosley's opinion is unreliable is because he did not review and has no knowledge of the data underlying the one-page Carfax summary. As Mr. Mosley confirmed at his previous deposition, Mr. Mosley has no knowledge concerning the following factors of the data underlying the Carfax summary:

| Topics | Mr. Mosley's Testimony | *Roth* Deposition (Exhibit D) Cite |
|---|---|---|
| How the data was sourced and analyzed | Did not know. | 58:25-61:5, 61:19-62:9 |
| Whether the data fields were accurate | Did not know. | *Id*. |
| Whether there were missing variables | Did not know. | *Id*. |
| Whether data complied with actuarial standards | Did not know. | 61:19-62:4 |
| Which insurers were involved | Did not know. | 88:14-89:8 |

6

| | | |
|---|---|---|
| What percentage was high-risk insurance | Did not know. | *Id.* |
| The timeframe for the underlying data | Did not know. | 76:1-5 |
| Whether 32% of the overall underlying data was for leased vehicles or owned vehicles | Did not know. | 79:1-21 |
| Location for any of the vehicles in the underlying data | Did not know. | 74:8-16 |
| Whether the category percentages (Leased vehicles = 2.8% of overall data) correlates with Florida percentages or with Geico percentages | Did not know. | 86:10-87:4 |
| Driver age/credit/driving experience/driving history/etc. or vehicle make/model/cost/age/etc. | Did not know. | 61:19-62:9 |
| Whether any variables were controlled for, whether any outliers were excluded that would be relevant to his opinion, whether any outliers weren't excluded that should have been, whether the rate of distribution was normal, whether all leased vehicles were from a study in California but all owned vehicles were from a study in South Dakota, location, etc. | Did not know. | *Id.* |

Mr. Mosley's lack of knowledge concerning virtually every aspect of the underlying data renders his opinion unreliable. *See, e.g.*, *Navelski v. Int'l Paper Co.*, 244 F. Supp. 3d 1275 (N.D. Fla. 2017) (failure to exclude outliers rendered expert opinion unreliable); *In re Paoli R.R. Yard Pcb Litig.*, 35 F.3d 717, 746 (3d Cir. 1994) (Courts may exclude experts where flaw in underlying evidence is large enough that expert does not have "good grounds" from which to draw opinion); *Amorgianos v. Amtrak*, 303 F.3d 256, 267 (2d Cir. 2002) (Same, and noting that reliability analysis applies to methodology, underlying data, and link between data and conclusions); *Montgomery County v. Microvote Corp.*, 320 F.3d 440, 448 (3d Cir. 2003) (affirming exclusion of expert testimony, on grounds that the data underlying his opinion was so unreliable that no reasonable expert could base an opinion on it, where the expert relied on a document but did not know the source or basis of the document). The logic of such cases applies *a fortori* here, given that Mr. Mosley did not review nor provide the underlying data at all! *See Advanced Telemedia, L.L.C. v.*

7

*Charter Communs., Inc.*, 2008 U.S. Dist. LEXIS 110021, at *3-4 (N.D. Ga. Jul. 17, 2008) (excluding expert testimony because, inter alia, expert did not review underlying data integral to his opinion); *McDowell v. Brown*, 392 F.3d 1283, 1301-02 (11th Cir. 2004) ("[A]n expert opinion is inadmissible when the only connection between the conclusion and the existing data is the expert's own assertions . . . .").

> 3. *The Report is Unreliable Because There Is No Indication the Loss Ratio Difference is Based on Comprehensive/Collision Coverage.*

This case concerns first-party total-loss claims under comprehensive and/or collision coverages. All other coverages – bodily injury, un/underinsured motorist, PIP, liability – many of which have significantly higher expected costs are utterly irrelevant to this litigation.

It is surprising, then, that Mr. Mosley did nothing to check whether the supposed 1.8% difference in loss ratio is a difference in first-party comprehensive/collision loss ratio, some other coverage, or some combination of coverages, and concedes that it certainly was not limited to comprehensive and collision coverage, but would have included all coverages. Mosley Dep. at 27-32. It is, of course, just as likely – perhaps more so – that the difference in loss ratio is attributable to UM coverage, or liability coverage, or any other coverage, than that it is attributable to comprehensive/collision coverage. Because the Carfax Summary makes no distinction and Mr. Mosley concedes knowing of no distinction, his opinion, which explicitly assumes the 1.8% difference *is entirely related to comprehensive/collision coverage*, is unreliable.

> 4. *The Opinion is Unreliable to the Extent It is Based on Supposed Differences in Policyholders' Attitude, Which is an Area in Which Mr. Mosely is Not Qualified to Offer Expert Testimony.*

Mr. Mosely is an actuary, and he supposedly applies this expertise to the opinions in this case. However, a careful analysis of his opinions shows Mr. Mosely actually resorts to unsupported psychological theory for the *only* concrete example to support his conclusions. Specifically, the only example that he provides supporting his opinion that there is a difference in loss ratios is listed in paragraph 32 of his report. Report at ¶32. There, Mr. Mosely states the only reason he has to assume a difference in claims rates for leased v. owned vehicles is the "difference in the attitude of the policyholder towards the use of the insurance claim process when driving an owned versus a leased vehicle." Mosley Dep. at 84-85.

Mr. Mosely claims that he can predict the behavior of insureds with property damage claims and that he can tell what type of insureds are more or less likely to make claims and when they will make a claim based on psychological differences in attitudes between policyholders who own their vehicle and policyholders who lease. He arrives at these conclusions because he assumes that leaseholders "know that if they turn the vehicle in with damage it will result in the lessee incurring additional charges for the repair." Report at ¶32. This may be true, but it assumes many things about leases, and about human psychology, and it fails to analyze the psychology of owners with property damage claims.

Respectfully, Mr. Mosely lacks the qualifications to offer such opinions. Mr. Mosley's conclusions about these supposed differences in attitude "just comes from experience talking with insurance operations, talking with people that settle claims." Mosley Dep. at 76. When pressed, he was unable to identify anything in actuarial science (his only purported area of expertise) to support a conclusion about loss ratios from assumptions about potential differing psychological attitudes of different types of policyholders when making claims. Mosley Dep. at 79-83.

Moreover, Mr. Mosely admits that he cannot find any actuarial standard that allows for an actuary to make assumptions about attitudes of insureds and use that to conclude there are differences in claims rates. Mosley Dep. at 80-81; *see Guinn v. AstraZeneca Pharms. LP*, 602 F.3d 1245, 1255 (11th Cir. 2010) ("primary purpose" of *Daubert* is to ensure that methodology utilized in courtroom "characterizes the practice of an expert in the relevant field.") (quoting *Kumho*, 526 U.S. at 152). In this way, his opinion is also unreliable and is not based on any recognized methodology or standard in his field of expertise, according to his own concession. It is, simply, the *ipse dixit* of the expert. Such opinions are not admissible:

> "To be considered reliable, the expert's weighing process must have been 'based on methods and procedures of science, rather than on subjective belief or unsupported speculation.' *Zoloft II*, 858 F.3d at 796. Otherwise, the methodology amounts to nothing more than the expert's *ipse dixit*, which the Supreme Court has admonished district courts against admitting into evidence."

-*In re Abilify (Aripiprazole) Prods. Liab. Litig.*, 299 F. Supp. 3d 1291, 1311 (N.D. Fla. 2018) (other citations omitted); see also Salinero v. Johnson & Johnson, 2019 U.S. Dist. LEXIS 179586, at *54 (S.D. Fla. Sep. 5, 2019) (proposed expert opinion concerning the "state of mind of

average physicians in the medical community" is unreliable "as based solely on [expert's] own *ipse dixit*.").

Finally, Mr. Mosely admits that he cannot "identify specific companies that I've worked with and specific results from their data" to support his theory that there are differences in claims rates between insureds with leased and owned vehicles. Mosley Dep. at 84-85. Although Mr. Mosely may subjectively believe policyholders with leased vehicles are more likely to make claims, nothing in actuarial science permits conclusions about claims rates based on such speculation derived from nothing more than talking to claims adjusters. Accordingly, such opinions must be excluded as inadmissible.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully submit Mr. Mosley's opinion is inadmissible and request this Court enter an Order excluding his testimony.

## CERTIFICATE OF CONFERENCE

Counsel for Plaintiff discussed the relief sought in this Motion via telephone with counsel for Defendants, who oppose the relief requested herein.

Dated: February 18, 2020

                                                    Respectfully submitted,

By:    */s/ Jacob Phillips*
         Jacob Phillips
         Florida Bar No.: 120130
         Edmund A. Normand
         Florida Bar No.: 0865590
         **NORMAND PLLC**
         3165 McCrory Place, Suite 175
         Orlando, Florida 32814-0036
         Tel: (407) 603-6031
         Fax: (888) 974-2175
         ed@normandpllc.com
         jacob.phillips@normandpllc.com

Christopher J. Lynch
Florida Bar No.: 331041
**CHRISTOPHER J. LYNCH, P.A.**
6915 Red Road, Suite 208
Coral Gables, Florida 33143
Tel:  (305) 443-6200
Fax: (305) 443-6204
clynch@hunterlynchlaw.com
lmartinez@hunterlynchaw.com

Bradley W. Pratt
Florida Bar No.: 0094300
**PRATT CLAY, LLC**
4401 Northside Parkway, Suite 520
Atlanta, Georgia 30327
Tel:  (404) 949-8118
Fax:  (404) 949-8159
bradley@prattclay.com

Tracy L. Markham
Florida Bar. No.: 0040126
**SOUTHERN ATLANTIC LAW GROUP, PLLC**
2800 N. 5th Street, Suite 302
St. Augustine, Florida 32084
Tel:   (904) 794-7005
Fax:  (904) 794-7007
tlm@southernatlanticlaw.com
pleadingsonly@southernatlanticlaw.com

Andrew Lampros (*pro hac vice*)
Christopher Hall (*pro hac vice*)
**HALL & LAMPROS, LLP**
1230 Peachtree Street, NW, Suite 950
Atlanta, Georgia 30309
Tel:   (404) 876-8100
Fax:  (404) 876-3477
alampros@hallandlampros.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 18th day of February, 2020, I electronically filed the foregoing **Motion to Exclude Testimony of Roosevelt Mosley and Request for *Daubert* Hearing** using the Court's ECF system, which will automatically serve the following counsel of record for Defendants:

> Alexander Fuchs (*pro hac vice*)
> Kymberly Kochis (*pro hac vice*)
> Eversheds Sutherland (US) LLP
> The Grace Building, 40th Floor
> 1114 Avenue of the Americas
> New York, New York 10036
> Tel:  (212) 389-5068
> Fax:  (212) 389-5099
> kymkochis@eversheds-sutherland.com
> alexfuchs@eversheds-sutherland.com
>
> Annette Urena Tucker
> Kaplan Zeena LLP
> Florida Bar No. 14838
> 2 South Biscayne Boulevard
> One Biscayne Tower, Suite 3050
> Miami, Florida 33131
> Tel:  (305) 530-0800
> Fax: (305) 530-0801
> annette.tucker@kaplanzeena.com
>
> ***Attorneys for Defendants***

            */s/ Jacob Phillips*
            Florida Bar No.: 120130